Michael TATUM, Appellant,

v.

**PROGRESSIVE POLYMERS, INC., Appellee.**

No. 12–93–00036–CV.

Court of Appeals of Texas, Tyler.

July 27, 1994.

Rehearing Denied Aug. 31, 1994.

William S. Hommel, Jr., Sammons & Parker, Tyler, for appellant.

Jeffrey C. Elliott, John R. Mercy, Texarkana, for appellee.

RAMEY, Chief Justice.

The Plaintiff below, Michael Tatum ("Tatum"), appeals from a take-nothing judgment in favor of the Defendant, Progressive Polymers, Inc. ("Progressive Polymers"), after a jury trial in a suit alleging discrimination against Tatum in failing to re-hire him after Tatum had filed a workers' compensation claim for injuries sustained at Progressive Polymers' plant. We will affirm.

The chronology of significant events is as follows:

- In 1985, Tatum was hired by Progressive Polymers and worked primarily as an extruder operator.
- In January 1990, while working at Progressive Polymers, Tatum injured his back and thereafter filed his workers' compensation claim. He did not return to work there.
- In November 1990, Tatum settled his workers' compensation claim.
- In December 1990, Tatum was medically released to return to work. He thereafter called Ed Lamb ("Lamb"), Progressive Polymers' president, to request re-employment.
- In August 1991, Tatum filed this suit.
- In October 1991, Progressive Polymers offered Tatum employment as an extruder operator. This offer was rejected, because Progressive Polymers did not offer to compensate Tatum for his time off work after being released to resume employment.
- From October 19–21, 1992, the case was tried.

Judgment was signed on October 26, 1992.

In his first point of error, Tatum asserts that the trial court erred in admitting evidence that Progressive Polymers offered

him a job as an extruder operator in October 1991 after his suit had been filed, because it was inadmissible as an attempt to compromise the claim. TEX.R.CIV.EVID. 408. It is well-established that offers made to compromise disputed claims are not admissible. *LaCoure v. LaCoure*, 820 S.W.2d 228, 235–236 (Tex.App.—El Paso 1991, writ denied). The trial court may exercise its discretion in determining whether a communication amounts to a compromise offer, and on appeal our court is not authorized to overrule an exercise of that discretion if the trial court's action is supported by evidence. *Duval County Ranch Co. v. Alamo Lumber Co.*, 663 S.W.2d 627, 634 (Tex.App.—Amarillo 1983, writ ref'd n.r.e.).

Lamb made the job offer in October 1991; Tatum was to be compensated at the same rate that he had been paid prior to the January 1990 injury. Lamb testified that he made the job offer in response to Tatum's earlier request for employment at his former position of extruder operator and that this was the first opening for such job classification. Lamb stated that the offer of employment was not conditioned upon Tatum dismissing his lawsuit against the company; Tatum did not testify that Lamb made this requirement nor did he say that he rejected the job offer because he felt that he would have to drop the suit. Tatum clearly explained that his reason for not returning to work for Progressive Polymers was that the company did not offer to compensate him for lost wages from the date that he was medically released to return to work until the job offer was made.[1]

■ The test as to whether a job offer would amount to an offer of compromise settlement is whether something is given up by one of the parties to avoid litigation where some concession is made by one or both of the parties. *Texas Imports v. Allday*, 649 S.W.2d 730, 736–37 (Tex.App.—Tyler 1983, writ ref'd n.r.e.). This was a straightforward offer of employment with no concession by Progressive Polymers nor any conditions imposed; on the other hand, Tatum rejected the offer without making a concession or other attempt to compromise. We hold that the trial court did not abuse its discretion in ruling that the job offer discussion was not inadmissible settlement negotiations between the parties.[2] Tatum's first point of error is overruled.

■ Tatum's final point of error asserts that the jury's failure to find that Progressive Polymers' refusal to employ Tatum because he had filed a workers' compensation claim was against the great weight and preponderance of the evidence. The standard for testing factual sufficiency when the appellant has the burden of proof on an issue is:

> In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all of the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. [citations omitted.]

*Marshall v. Superior Heat Treating Co.*, 826 S.W.2d 197, 200 (Tex.App.—Fort Worth 1992, no writ).

Tatum's testimony and Progressive Polymers' responses to certain interrogatories provide the factual predicate for Tatum's point. Lamb's testimony presents Progressive Polymers' response. Tatum argues that he sought employment in any job from the time of his medical release to return to work in December 1990, and that the failure of Progressive Polymers to offer him a job while employing eight other job applicants demonstrates discrimination because of his workers' compensation claim.

Lamb's testimony varied from Tatum's in several respects. First, Lamb testified that, when requesting re-employment, Tatum stated that his only interest was in returning to his prior job of extruder operator. Accord-

---

1. Tatum testified to no reason that his former employer was obligated to pay back wages.

2. We are cognizant of the potentially uncomfortable relationship that might exist between an employer and its employee who is its adversary in a lawsuit. However, Tatum here does not contend that that relationship was the basis for his rejection of the job offer. Furthermore, we are not called upon to address the propriety of the direct communications between the parties while a suit is pending between those parties.

ing to Lamb, those jobs filled by the company during Tatum's unemployment were inappropriate for Tatum for various reasons. Some required specific college degrees, specialized computer skills, or imposed physical demands that might have been excessive for anyone who, like Tatum, had had back problems. Others were unskilled jobs paying minimum scale in which Tatum expressed that he was "not really" interested. Lamb and Tatum agreed that when re-employed Tatum expected to be compensated at his pre-injury level. Lamb insisted that he offered Tatum the first extruder operator position that became available.[3]

Thus, there are two divergent lines of testimony pertaining to any discrimination against Tatum in the manner and timing of his re-employment. The trier of fact is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Rego Co. v. Brannon,* 682 S.W.2d 677, 680 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). The jury did not find discrimination. In considering and weighing all of the evidence, we cannot conclude that the jury's failure to find discrimination against Tatum is so contrary to the great weight and preponderance of the evidence as to be manifestly unjust. Tatum's second point of error is overruled.

The judgment of the trial court is affirmed.

---

**3.** There was evidence that Progressive Polymers' files contained information that Tatum had been medically released to return to work a few days before Lamb had hired an extruder operator trainee, but Lamb stated that he had not seen that information before he accepted the trainee for employment.